UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHARLES J. BIGGS, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | CASE NO. 3:06-CV-445RM |
| ) | |
| OLDCASTLE GLASS INC., ) | |
| ) | |
| Defendant ) | |

OPINION and ORDER

This cause is before the court on the motion of Oldcastle Glass, Inc. for summary judgment on Charles Biggs' claims against it. Mr. Biggs claims that while he was employed at Oldcastle's South Bend, Indiana plant, he was treated in a discriminatory manner because of his age and terminated in retaliation for his refusal to write up senior employees for safety violations in violation of 29 U.S.C. § 631(a) of the Age Discrimination in Employment Act of 1967 ("ADEA"). For the reasons that follow, the court grants Oldcastle's summary judgment motion.

I.  FACTUAL BACKGROUND

The following facts are taken from the summary judgment record and are viewed in the light most favorable to Mr. Biggs, the nonmoving party. Oldcastle Glass, Inc. is a glass manufacturing company that operates fabrication facilities and warehouses in several states. On March 15, 1981, Mr. Biggs accepted a position as a warehouse worker at Oldcastle's South Bend plant, then known as

"Interstate Glass."[1] Two years later, Mr. Biggs was promoted to the position of customer service representative. Mr. Biggs continued in this position until 1998, when he was promoted to plant supervisor and given a significant raise in salary. Mr. Biggs' supervisor, Terry Shaw, transferred Robert Quade from the Novi, Michigan, plant to take over Mr. Biggs' duties as a customer service representative. Mr. Biggs served as plant supervisor until he was terminated on December 16, 2005. Mr. Biggs was 53 years old when he was terminated.

In his position as plant supervisor, Mr. Biggs directly oversaw all of the employees at the plant. Mr. Biggs reported to branch manager, Terry Shaw,[2] who, in turn, reported to general manager, James Sherman[3]. Mr. Shaw evaluated his supervisory employees, including Mr. Biggs, on a semi-annual basis, providing feedback to both the employees and Mr. Sherman. Mr. Shaw's written evaluations included an overall performance classification, rating employees as "Needs Improvement," "Meets Standards," or "Well Above Standards."

Beginning in 2001, Mr. Shaw indicated issues with Mr. Biggs' performance as plant supervisor. On the December 2001 evaluation, Mr. Shaw rated Mr. Biggs as "Needs Improvement" and described him as lacking enthusiasm and motivation. [Def. Exh. A.] The evaluation also stated a problem with supervisory

---

[1]North American Glass Distributors purchased the Interstate Glass facility in 1993.

[2]Mr. Shaw was born March 28, 1945.

[3]Mr. Sherman was born November 9, 1940.

2

coverage of the warehouse during the early morning shift. On the mid-year 2002 evaluation, Mr. Shaw noted improvement with Mr. Biggs' performance but still rated him as "Needs Improvement," again citing warehouse supervision problems. [Def. Exh. B.] Mr. Sherman added that Mr. Biggs' performance was "not acceptable."

By year-end 2002, Mr. Biggs started to show "considerable improvement" and received "Meets Standards" ratings in 2003 and 2004. [Def. Exh's C-F.] Mr. Biggs' 2004 year-end evaluation, on the other hand, indicated communication problems and a continued failure to consider himself as part of "management." [Def. Exh. F.] In mid-year 2005, Mr. Shaw changed Biggs' rating from "Meets Standards" to "Needs Improvement." [Def. Exh. G.] After reviewing Mr. Shaw's comments, Mr. Sherman added that the "Review says 'Needs Improvement' not 'Meets Standards' as a supervisor . . ." and that Mr. Biggs "needs to resign" if Mr. Shaw agreed with the "Needs Improvement" designation. [Def. Exh. G.] During the discussion of his mid-year 2005 review, Mr. Biggs told Mr. Shaw that he felt that Mr. Shaw had lied to him by offering him the plant supervisor job so Mr. Shaw could hire his friend, Mr. Quade, as a customer sales representative. Mr. Biggs says that Mr. Shaw "got upset" with him during the evaluation and told him that he could "get a different job."

After the mid-year 2005 evaluation, a warehouse employee was seriously injured during the early morning shift. Oldcastle claims the injury was the result of a significant safety violation, and that Mr. Biggs was not overseeing the

3

warehouse at the time of the accident. Following the accident, Mr. Shaw changed Mr. Biggs' work schedule from the day shift to the 3:00 a.m. to 12:00 p.m. shift. Mr. Biggs previously worked only the day shift.

In November 2005, Mr. Biggs received another evaluation with a "Needs Improvement" rating. [Def. Exh. H.] Mr. Biggs alleges that, around this same time, he had a discussion with Mr. Shaw, who told Mr. Biggs that he should stop giving verbal warnings and start "writing up" employees "who have been here more than twenty years." Mr. Biggs claims that Mr. Shaw said that if the older employees didn't like the new policy, "we should just get rid of them." Mr. Biggs believed this was an age-based directive, and he claims that he refused to follow the order and single out older workers for fabricated write-ups. Oldcastle responds that the context of this conversation involved a discussion of the new safety program and a lack of enforcement of the new rules.

In December 2005, Mr. Biggs states that he started having problems with Robert Quade,[4] a fellow employee. Mr. Biggs met with Mr. Shaw on December 14 to express his concerns. Mr. Biggs claims that he told Mr. Shaw that he thought that Mr. Quade was "stabbing him in the back," and Mr. Shaw promised to talk to Mr. Quade. Two days later, Mr. Shaw approached Mr. Biggs and told him that he thought Mr. Biggs "should just turn in [his] keys." When Mr. Biggs asked whether he was being fired, Mr. Shaw answered affirmatively and said Mr. Biggs

---

[4] Mr. Quade was born August 6, 1951.

4

would receive "two weeks of severance pay."

After firing Mr. Biggs, Oldcastle moved another plant employee, salesman Adam Duty, into the position of plant supervisor. Mr. Duty is younger than Mr. Biggs. Mr. Duty temporarily served in a supervisory capacity until Oldcastle hired a new plant supervisor through a job recruiter. Once the position was filled, Oldcastle returned Mr. Duty to his original sales position.

Mr. Biggs filed a charge of discrimination with the EEOC, complaining that he was treated in a discriminatory manner because of his age. Mr. Biggs didn't specifically allege retaliation or check the box indicating "retaliation" on the charge form. The EEOC issued its right to sue letter, and Mr. Biggs filed his complaint seeking compensatory relief, fees, and costs. While Mr. Biggs argues that Oldcastle discriminated against him and terminated him based on his refusal to write-up older employees, Oldcastle contends that it terminated Mr. Biggs as a result of his poor performance and expressed job dissatisfaction.

## II. Discussion

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. O'Neal v. City of Chicago, 392 F.3d 909, 910-911 (7th Cir. 2004). A nonmoving party cannot rest on mere allegations or denials to overcome a motion for summary judgment; "instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). Specifically, the nonmoving party must point to enough evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-323 (1986); Lawrence v. Kenosha Cty., 391 F.3d 837, 842 (7th Cir. 2004).

### (A) Age Discrimination

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To succeed on a discrimination claim under the ADEA, a plaintiff must show that age "actually motivated the employer's decision . . . [t]hat is, the plaintiff's age must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000) (citation omitted).

6

Mr. Biggs has two means of proving his age discrimination claim: (1) by presenting evidence under the direct method of proof that his age was determinative in Oldcastle's decision to terminate him; or (2) by employing the indirect, burden-shifting method of proof. *See* Raymond v. Ameritech Corp., 442 F.3d 600, 610 (7th Cir. 2006); Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

To establish a prima facie case under the direct method, Mr. Biggs must present evidence, either direct or circumstantial, that he would not have been terminated but for his age. *See* Radue v. Kimberly-Clark Corp., 219 F.3d 612, 616 (7th Cir. 2000); *see also* Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1146 (7th Cir. 1997). Essentially, the direct method requires an admission by the decisionmaker that the adverse employment action was "based on the prohibited animus." Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir. 1994); *see also* Radue v. Kimberly-Clark Corp., 219 F.3d at 616. Absent evidence of an outright admission, a plaintiff may still proceed under the direct method if there is sufficient circumstantial evidence that points directly to a discriminatory reason for the termination decision. Ptasznik v. St. Joesph's Hosp., 464 F.3d 691, 695 (7th Cir. 2006); *see also* Adams v. Wal-Mart Stores, Inc., 324 F.3d 935, 939 (7th Cir. 2003).

Mr. Biggs presents no evidence of admissions of discriminatory animus on his supervisors' part. Neither Mr. Shaw nor Mr. Sherman made derogatory age-based comments directed at Mr. Biggs.  Similarly, Mr. Biggs has not presented a

7

"convincing mosaic" of circumstantial evidence to directly support his age discrimination claim. *See* Troupe v. May Dep't Stores, 20 F.3d at 737. Mr. Biggs argues that Mr. Shaw's comments about writing up senior employees for safety violations demonstrates that Oldcastle had a company policy of discriminating against older workers. These comments alone would not allow a juror to find a casual link between Oldcastle's allegedly prejudicial policy and Mr. Biggs' termination. Mr. Biggs can't show that he wouldn't have been fired but for his age, so he has not satisfied his burden under the direct method approach and must proceed under the indirect method of proof.

Under the indirect method, Mr. Biggs may prove a prima facie case of discrimination by demonstrating that: (1) he was a member of the protected class of forty or older; (2) he was otherwise qualified for the position of plant supervisor; (3) he was discharged; and (4) that substantially younger employees who were similarly situated were treated more favorably. Janiuk v. TCG/Trump Co., 157 F.3d 504, 507 (7th Cir. 1998); *see also* Fisher v. Wayne Dalton Corp., 139 F.3d 1137, 1141 (7th Cir. 1998) (clarifying that substantially younger "means at least a ten-year age difference; any age disparity less than ten years is 'presumptively insubstantial.'"). Upon such a showing, the burden shifts to Oldcastle to articulate a legitimate non-discriminatory reason for Mr. Biggs' discharge. Barricks v. Eli Lilly and Co., 481 F.3d 556, 559 (7th Cir. 2007). If Oldcastle meets that burden of production, Mr. Biggs bears the ultimate burden to show that Oldcastle's proffered reason is a pretext for age discrimination. Id.

8

The parties don't dispute that Mr. Biggs successfully established that he was over the age of forty at the time of his discharge, making him a member of a protected class. Likewise, the parties don't dispute that Mr. Biggs' termination was an adverse employment action. In determining whether Mr. Biggs established a prima facie case, then, the court need only consider whether Mr. Biggs was performing up to Oldcastle's legitimate expectations and whether he can point to any similarly-situated employees who were treated more favorably.

Oldcastle presents evidence of numerous substandard evaluations stating that Mr. Biggs was not meeting the standards for his position. These evaluations document consistent problems with Mr. Biggs' attitude as well as his failure to adequately supervise employees during the late shift. Mr. Biggs doesn't dispute the validity of these evaluations but rather relies on his receipt of favorable ratings on six of his last nine evaluations. Mr. Biggs' assertions that he was a model employee are not enough, standing alone, to dispute Oldcastle's contrary conclusions. Gustovich v. AT&T Comm'ns, Inc., 972 F.2d 845, 848 (7th Cir. 1992) ("An employee's self-serving statements about his ability . . . are insufficient to contradict an employer's negative assessment of that ability."). Mr. Biggs doesn't challenge the fact that he received the lowest possible rating on his last evaluation or create a genuine issue of fact that Oldcastle's decision to terminate him based on this evaluation was wrong. Thus, Mr. Biggs hasn't shown that he was meeting Oldcastle's legitimate expectations.

If Mr. Biggs could establish the first three elements of the prima facie test,

he also would need to point to a similarly situated employee who was not a member of his protected class and received more favorable treatment. *See* Radue v. Kimberly-Clark Corp., 219 F.3d at 617. A similarly situated employee must be "directly comparable in all material respects." Grayson v. O'Neill, 308 F.3d 808, 819 (7th Cir. 2002). This requires a showing that Mr. Biggs and another employee "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Radue v. Kimberly-Clark Corp., 219 F.3d at 618. Mr. Biggs argues that the younger Adam Duty was treated more favorably because he temporarily replaced Mr. Biggs. Mr. Biggs doesn't explain how Mr. Duty was similarly situated or prove that he is substantially younger. Mr. Duty worked as a sales representative, rather than in management, and was not subject to the same standards as Mr. Biggs. Mr. Biggs focuses, instead, on Mr. Shaw's directive to write-up older employees. This evidence addresses pretext and not whether Mr. Duty was a similarly situated employee. Accordingly, Mr. Biggs hasn't fulfilled the elements necessary for a prima facie of age discrimination.[5]

---

[5] In his complaint and brief in opposition to Oldcastle's motion for summary judgment, Mr. Biggs argues in detail regarding Mr. Quade's appointment as a customer service representative. Mr. Biggs alleges that Mr. Quade attempted to "attack" his position and that Mr. Quade was hired because he was a personal friend of Mr. Shaw. Mr. Biggs does not maintain that Mr. Quade was a similarly situated employee, and in any case, Mr. Quade doesn't satisfy the requisites of a similarly situated employee under the ADEA because he wasn't significantly younger than Mr. Biggs. *See* O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 313 (1996) (holding that fact that ADEA plaintiff was replaced by someone insignificantly younger did not satisfy the similarly situated element

Even had Mr. Biggs established a prima facie case, Oldcastle has produced sufficient evidence to support its nondiscriminatory reason for discharging Mr. Biggs. Oldcastle presented evidence that it terminated Mr. Biggs based on poor performance and deteriorating attitude. Because Oldcastle has come forth with a legitimate nondiscriminatory reason for Mr. Biggs' discharge, the court will assume that Mr. Biggs has satisfied the requirements of a prima facie case and will examine whether he has demonstrated that Oldcastle's proffered reason is a pretext for discrimination. *See* United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714 (1983) ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant.").

Mr. Biggs may attempt to show that he was the victim of discrimination by showing that Oldcastle's proffered explanation is a pretext for discrimination. Reeves v. Sanderson Plumbing, 530 U.S. at 143. To show pretext, Mr. Biggs must demonstrate that Oldcastle gave a dishonest explanation for its actions. *See* Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d 681, 684 (7th Cir. 2000) (pretext "means something worse than a business error; pretext means deceit used to cover one's tracks."). If Oldcastle's decision to terminate Mr. Biggs was in good faith, the court can't second-guess Oldcastle's actions regardless of whether the court believes those actions were correct. *See* Jackson v. E.J. Brach Corp., 176

---

of the indirect method approach).

F.3d 971, 983 (7th Cir. 1999) (holding that so long as the employer honestly believes in the proffered reason for its actions, then there is no pretext "even if the reasons are foolish or trivial or even baseless."). Courts can't impose on employers their own ideas of what constitutes a prudent business decision; they "can assess only the question [of] whether an employer has taken an action for a forbidden reason." Leonberger v. Martin Marietta Materials, Inc., 231 F.3d 396, 399 (7th Cir. 1999).

Mr. Biggs has not produced sufficient evidence that Oldcastle's proffered reason for terminating him was a lie or had no basis in fact. In arguing pretext, Mr. Biggs contends that Mr. Shaw's directive to write-up senior employees for safety violations demonstrates a discriminatory animus toward older workers. Mr. Shaw, on the other hand, explained that his statement referred to writing up all employees for violations regardless of their seniority based on Oldcastle's interest in improving overall safety enforcement. In fact, Mr. Biggs admits in his deposition that the write-up conversation occurred in the context of discussing Oldcastle's new safety program and getting "everybody to comply." While Mr. Biggs tries to dispute this fact by arguing that Mr. Shaw's own safety violations demonstrate pretext, Mr. Shaw's violations do not show that Oldcastle's given reason for firing Mr. Biggs was deceitful. Oldcastle's semi-annual evaluations consistently reflect performance issues and a lack of motivation on the part of Mr. Biggs. Mr. Biggs has neither refuted the substance of these evaluations nor presented evidence which tends to show that Oldcastle did not act in good faith by terminating Mr.

Biggs for poor performance.[6]

Mr. Biggs hasn't presented sufficient evidence of discriminatory motivation to create a genuine issue of fact for trial. Accordingly, Mr. Biggs has not carried his burden on his age discrimination claim, and Oldcastle is entitled to summary judgment.

*(B) Retaliation*

Mr. Biggs also claims that he was the victim of unlawful retaliation because he refused to write up senior employees for safety violations after being directed to do so by Mr. Shaw. 42 U.S.C. § 2000e provides that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice . . . ." Thus, the ADEA protects employees from age discrimination, and Title VII protects them from retaliation from complaining about that discrimination.

Similar to his age discrimination claim, Mr. Biggs may prove retaliation using either a direct or indirect method of proof. Because Mr. Biggs has no evidence of a casual link demonstrating that Oldcastle wouldn't have terminated him but for his refusal to implement Mr. Shaw's directive, he must proceed under the indirect method. Mr. Biggs must show that: (1) he engaged in a statutorily

---

[6] In addition, both of Mr. Biggs' supervisors, Mr. Shaw and Mr. Sherman, were older than Mr. Biggs at the time of his termination, weighing heavily against a finding of age discrimination. *See* Kadas v. MCI Systemhouse Corp., 255 F.3d 359, 361 (7th Cir. 2001).

protected activity; (2) he performed his job according to Oldcastle's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a similarly situated employee who did not engage in the protected activity. Griffin v. Porter, 356 F.3d 824, 828 (7th Cir. 2004).

Oldcastle argues that Mr. Biggs can't establish a prima facie case of retaliation because he didn't engage in a statutorily protected activity. In particular, Oldcastle maintains that no senior employees committed safety violations after Mr. Shaw gave his directive to Mr. Biggs, so Mr. Biggs didn't have the opportunity to refuse to comply with the alleged prejudicial policy. Mr. Biggs admits in his deposition that he never observed a senior employee violate the safety rules after Mr. Shaw gave him the directive. In addition, Mr. Biggs didn't specifically complain to Oldcastle management or tell anyone that he wasn't going to comply with the directive. As such, Oldcastle disputes Mr. Biggs' claim that he resisted Mr. Shaw's instructions and, thus, engaged in a statutorily protected activity. Even if Mr. Biggs' refusal qualifies as a protected activity, Mr. Biggs must also prove that he met Oldcastle's performance expectations and that he was treated less favorably than a similarly situated employee. As noted above, Mr. Biggs has not produced evidence sufficient to satisfy either of these requirements.

Regardless of Mr. Biggs' ability to establish a prima facie case, Oldcastle presented a legitimate nondiscriminatory reason for terminating Mr. Biggs, and Mr. Biggs hasn't produced evidence sufficient to establish that this reason for his termination was discrimination. Mr. Biggs' argument hinges on the timing of Mr.

Shaw's directive and Mr. Biggs' termination a month later. Suspicious timing alone, however, does not create a genuine issue as to casual connection. *See* Wyninger v. New Venture Gear, Inc., 361 F.3d 965, 981 (7th Cir. 2004) (although "[t]here is no bright-line rule as to the amount of evidence necessary to survive summary judgment. . . it is clear that 'mere temporal proximity is not enough to establish a genuine issue of material fact."); Juarez v. Ameritech Mobile Comm'ns, Inc., 957 F.2d 317, 321 (7th Cir. 1992) (holding that the plaintiff could not prove that she was terminated because of her Title VII discrimination claim rather than for poor work performance based solely on timing). Mr. Biggs submits no other evidence that could demonstrate that Oldcastle's decision to terminate him for poor performance was a deliberate falsehood. *See* Hague v. Thompson Distrib. Co., 436 F.3d 816, 823 (7th Cir. 2006) ("[T]o show pretext, [plaintiff] must show more than [defendant's] decision was mistaken, ill considered or foolish, [and] as long as [the employer] honestly believes those reasons, pretext has not been shown."). Mr. Biggs has not shown pretext, and Oldcastle is entitled to summary judgment on Mr. Biggs' retaliation claim.[7]

### III. CONCLUSION

For the foregoing reasons, the court GRANTS Oldcastle's motion for

---

[7]Mr. Biggs did not raise a retaliation claim before the EEOC, either specifically in the facts pleaded or by checking the retaliation box on the charge of discrimination form. Nevertheless, Oldcastle was on reasonable notice that Mr. Biggs might bring a retaliation claim against it, and Mr. Biggs' claim does not fail for this reason alone.

summary judgment. [Doc. No. 23]. The clerk shall enter judgment accordingly.

    SO ORDERED.

    ENTERED: October 12, 2007


                                         /s/ Robert L. Miller, Jr.
                                         Chief Judge
                                         United States District Court